**In re Roswell Ellison WATSON, and Dora Cobb Watson, Bankrupts.**

**John R. THOMPSON, as Trustee in the matter of Roswell E. Watson, a/k/a Robert E. Watson, or R. E. Watson, and Dora Cobb Watson, Plaintiffs,**

v.

**The UNITED STATES of America acting By and Through the DEPARTMENT OF TREASURY–INTERNAL REVENUE SERVICE, Defendant.**

Nos. 374–22, 374–21.

United States District Court,
S. D. Georgia,
Dublin Division.

Sept. 5, 1978.

433

Ben Kirbo, Bainbridge, Ga., for plaintiffs.

William T. Moore, Jr., U. S. Atty., Kenneth C. Etheridge, Asst. U. S. Atty., Savannah, Ga., Herbert L. Moody, Jr., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

APPEAL FROM FINDINGS OF
BANKRUPTCY COURT

OPINION AND ORDER

I

*The Litigation*

LAWRENCE, District Judge.

The United States appeals from the findings and Order of the Bankruptcy Judge that the Bankrupt is entitled to a deduction for net operating losses claimed to have been sustained in his farming operations in the years 1970 and 1972.

The Internal Revenue Service assessed the amount of income taxes due by the Watsons at $109,645.65. The Bankrupt maintained that a carry back loss should be allowed as a deduction against income taxes assessed for 1968, 1969 and 1971.

In an Order filed December 8, 1977, the Bankruptcy Judge found that the taxpayer was entitled to a credit of $64,513.11 on his tax liability in other years. He made the following findings of fact in respect to operating losses:

> "18. That the bankrupts did suffer a net operating loss in the year 1970 in the amount of $25,735.39.
> "19. That the bankrupts did suffer a net operating loss in the year 1972 in the amount of $39,397.28."

A final Order was entered on January 28, 1978. The Bankruptcy Court found that applying the deduction to which Watson was entitled, the net amount of income taxes due was $66,312.12.[1]

II

*Contentions and Factual Background of Issue*

The Government contends that the Referee's findings of fact are erroneous in view of the total lack of evidence in the record substantiating the operating loss found by the Referee to have been sustained by Bankrupt in 1970 and 1972.[2]

Counsel for Mr. Watson replies that there was sufficient evidence to support such losses. He insists that under the "clearly erroneous" standard of Bankruptcy rule 810 the Referee's findings of fact must be accepted by this Court on appeal.

The substantiation relied on by the Bankrupt is that the losses grew out of farming operations in Florida in 1970 (Tr. 150) and in Georgia in 1972 (Tr. 70, 72, 49–50); that Mr. Watson furnished the Internal Revenue Service all of his books and records pertaining to his income in those years, and that he testified that they and his tax returns accurately reflect the operating losses suffered in 1970 and 1972. Tr. 51–52.

Asked at the trial what books and records he had to substantiate the operating losses claimed, Mr. Watson replied that he did not know. Tr. 70. He testified, however, that he turned over to Revenue Agent Larry Bowman all books and records reflecting and supporting the income and expenditures shown in his tax returns for those years. Tr. 72.

Counsel for the Bankrupt is mistaken when he states that the Government conceded that the 1970 and 1972 returns were accepted as correct by the Internal Revenue Service. Tr. 82; brief, p. 7. Counsel for the United States stated during the trial that "the computations made by Mr. Bowman will undoubtedly show . . . the very most favorable figure that they could come up with, and made some adjustments in accordance with the statutory requirements, and these adjustments are less than those claimed by Mr. Kirbo, but that is not

---

1. The net operating loss is not treated as a credit against the tax owed. It is a deduction from taxable income in the carry back year. In this case, the $25,735.39 (net operating loss in 1970) was deducted from taxable income in 1968. The $39,397.68 (net operating loss in 1972) was deducted from taxable income in 1969.

2. The Government abandoned its contentions as to the statute of limitations barring claim of a deduction and the Trustee has conceded that the United States is entitled to interest on the total amount of the tax liability of the Bankrupts for each of the years 1968, 1969 and 1971.

our primary position, our primary position is that to the extent the taxpayer is unable to prove income and deductions, his objections as to the claim will fail from the offset [outset]." Tr. 43, 35.

The tax returns for the years in question were admitted in evidence by the Bankruptcy Judge as representing true and correct copies but *not as to the correctness of the contents thereof.* Tr. 44, 46, 47, 66. If the Internal Revenue Service admitted that some part of the deduction claimed was probably allowable, it never conceded that *all* of the alleged operating losses was correct.

According to the Government's brief (p. 9), it has no desire to deny any deductions properly taken by the Bankrupt. What it sought to learn was whether there were books and records substantiating the income and deduction figures "so that we derive [arrive] at a specific amount for a net operating loss, if there was one." Tr. 71, 72. A taxpayer is under the duty to maintain records substantiating same. 26 U.S.C. § 6001. He must furnish as definite proof as is reasonably possible in respect to the nature and the details of the expenditures claimed. *Rugel v. Commissioner of Internal Revenue*, 127 F.2d 393 (8th Cir.).

There was considerable evidence at the hearing as to depreciation as well as various other items. However, there was little testimony as to the operating losses. The claim that the Bankruptcy Judge's findings in that regard has evidentiary support largely rests on the affirmation by the Bankrupt that his tax returns for 1970 and 1972 are correct as to what is reflected therein in respect to losses in those years.

### III

*Burden of Proof*

Burden of proof can play an important role in this type of case. I assume that Judge Coolidge followed the governing rule as to onus. However, his Order and findings do not make it clear that he did.

■ Counsel for Mr. Watson is incorrect in stating (see brief, p. 7) that the income

tax returns and the deductions taken therein for operating losses establish a prima facie case that shifts the burden to the United States to disprove. Tax returns are no more than self-serving statements. They are not evidence. See *Rocco v. Commissioner*, 32 T.C.M. 518 (1973). More than that, what shifted the burden is not the tax return but the introduction in evidence by the Government of the proof of claim in the Bankruptcy Court. The burden thereupon falls on the taxpayer to rebut the case thus established.

Prior to the Act of 1960 a proof of claim had to be sworn to. It and the new Rules change the law in that regard. See 11 U.S.C. § 93(a). Bankruptcy Rule 911(a), (b) provides that a claim signed by an attorney need not be verified. Under Rule 301(b) if properly executed and filed, it constitutes "prima facie evidence of the validity and amount of the claim." Rule 301(b).

■ A proof of claim in due form places upon the objector the burden of coming forward with proof contradicting it. 9 Am.Jur.2d Bankruptcy § 504. The introduction of the proof of the creditor's claim must be met and overthrown by countervailing proof. *Paschal v. Blieden*, 127 F.2d 398 (8th Cir.); *Solari Furs v. United States*, 436 F.2d 683 (8th Cir.). "While the burden of proof with respect to deductions is normally on the taxpayer . . . that is not the case in bankruptcy proceedings where the burden of establishing its claim rests on the government. . . . The government is aided, however, by a strong presumption which arises in its favor by the filing of a sworn proof of claim; a prima facie case is established and the burden of going forward with rebutting evidence is on the debtor." *In re Avien, Inc.*, 390 F.Supp. 1335, 1341–42 (E.D., N.Y.), aff'd 532 F.2d 272 (2nd Cir.).

The introduction by the Government of its claim in the instant case shifted to the Watsons the burden of rebutting its correctness. Of course, the ultimate burden of persuasion remains with the United States.

## IV

### Effect of Conclusory Findings of Fact

I earlier referred to the findings of the Bankruptcy Judge which state no more than that a net operating loss was sustained in 1970 in the amount of $25,735.39 and in 1972 a loss of $39,397.28. There was no elaboration as to this determination.

 Rule 52(a) F.R.Civ.P. applies to findings and conclusions by bankruptcy courts. *Union Bank v. Blum*, 460 F.2d 197 (9th Cir.); *In re Cesari*, 217 F.2d 424 (7th Cir.). The purpose is to aid appellate courts by affording a clear understanding of the basis of the decision by the trial court. *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426 (5th Cir.); *Wynn Oil Company v. Purolator Chemical Corporation*, 536 F.2d 84 (5th Cir.). If there is an absence of indication of how, why, or on what basis the finding of fact rested, there has not been sufficient compliance with the Rule. *Theriault v. Silver*, 547 F.2d 1279 (5th Cir.), cert. den. 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150.

 Where the findings of fact upon which the judgment was granted are phrased in broad conclusory terms and do not include any subsidiary ones giving appropriate support to the conclusory finding of the Court below, the case must be remanded for detailed findings. *Equal Employment Opportunity Commission v. United Virginia Bank/Seaboard National*, 555 F.2d 403 (4th Cir.). "[F]indings that are nothing more than broad general statements, stripped of underlying analysis or justification shedding some light on the reasoning employed," render meaningful review impossible. See *Echols v. Sullivan*, 521 F.2d 206 (5th Cir.). As stated in *Corley v. Jackson Police Department*, 566 F.2d 994, 1000 n.8 (5th Cir.): "Prior decisions of this Court leave no doubt that Rule 52(a) proscribes conclusory findings which do not indicate the factual basis for an ultimate conclusion."

 The "clearly erroneous" standard for reversals of findings of the bankruptcy courts on appeal (Rule 810) is inapplicable where the basis of a conclusory or ultimate finding of fact is not supported by the record. Even if the Referee's finding as to the operating loss were treated as an ultimate factual determination, the record must disclose a reasonable basis therefor or other facts from which such inference is drawn. See *In the Matter of Mid-Center Redevelopment Corp.*, 383 F.Supp. 954, 958 (D.N.Y.); *In Re Pioch*, 235 F.2d 903, 906 (3rd Cir.).

 The tax returns in themselves carry no evidentiary weight. A bare affirmation by the taxpayer of their correctness and his testimony that the income and loss reflected in them is accurate is on the same level of unpersuasiveness. The record before the Referee and this Court is too insubstantial as to loss deduction to permit meaningful findings and conclusions thereon. It is inadequate for the purpose of proper determination by a reviewing court of the issues.

## ORDER

Under Rule 810 the district court may on appeal affirm or reverse the bankruptcy court's Order and findings or it may remand the case with instructions for further findings. This is not an appropriate case for either reversal or affirmance. Remand is in order. The appeal will take that direction for the purpose of reconsideration of the findings in the light of the rule as to burden of proof dealt with in this Opinion and for findings of fact supporting the conclusion reached and, to the extent required, for a determination of the amount of interest due on the entire amount of the tax liability of the bankrupts for each of the years 1968, 1969 and 1971.

I leave it to Judge Coolidge to decide whether additional evidence as to the existence and the amount of the operating losses claimed by Bankrupt requires an evidentiary hearing in view of the inadequacy of the existing record.

Judgment will be entered accordingly.